UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

JANE DOE #4,

    Plaintiff,

v.                                                 CIVIL ACTION NO.  5:20-cv-00865

RALEIGH GENERAL HOSPITAL, LLC
and DR. ZOUHAIR KABBARA; and
John Doe, individual and/or corporations,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending are Defendant Raleigh General Hospital, LLC's ("RGH") Motion to Dismiss Plaintiff's Complaint [Doc. 11], filed February 29, 2021; Plaintiff Jane Doe #4's Motion for Rule 11 Sanctions [Doc. 25], filed March 08, 2021; RGH's Rule 15(d) Motion to Supplement Prior Pleadings with Recent Decision by the Supreme Court of Appeals of West Virginia [Doc. 35], filed June 3, 2021; and RGH's Motion to Stay Discovery, or in the Alternative, for a Protective Order [Doc. 46], filed September 7, 2021. The matters are ready for adjudication.

I.

The Complaint alleges Doe began working at RGH in August 2018. [Doc. 1-1 at 12]. Doe alleges RGH employed Kabbara or permitted him to practice medicine at its location. [*Id.* at 11]. During her employment, Defendant Zouhair Kabbara routinely approached Doe in the hallway to have conversations and compliment her. [*Id.* at 12]. The conversations and compliments made Doe uncomfortable and she made efforts to avoid Kabbara. [*Id.*].

In July 2019, Kabbara approached Doe, handed her a slip of paper with his phone number on it, and told her that she better answer when he calls. [*Id.*]. He also said he would take care of her. [*Id.*]. He offered to buy her things and said she would not have to work. [*Id.*]. Later that same day, Kabbara again approached Doe and asked her to meet him outside to talk. [*Id.*].

When Doe went outside on her break, Kabbara asked her to ride to Kroger with him. [*Id.* at 13]. Doe acquiesced, entered Kabbara's car, and they drove in the direction of Kroger. [*Id.*]. However, Kabbara did not stop at Kroger; he instead parked near some apartments behind Kroger. [*Id.*]. After making comments about how Doe should leave her boyfriend, Kabbara reached over and put his hands down Doe's pants without consent. [*Id.*]. Doe forced his hands out of her pants and demanded Kabbara take her back to RGH. [*Id.*]. He complied, and the two arrived back at RGH forty-five minutes after Doe had gone on her fifteen-minute break. [*Id.*].

On December 23, 2020, Plaintiff instituted this action. She asserted nine claims against Defendants. [*See* Doc. 1-1 at 14–20]. Doe alleges Kabbara's inappropriate conduct was reported to RGH on multiple occasions, yet RGH still employed or credentialed him. [*Id.* at 14].

On January 29, 2021, RGH filed a Motion to Dismiss. [Doc. 11]. RGH contends this is a medical professional liability action which, must be dismissed for failure to comply with the pre-suit requirements of the West Virginia Medical Professional Liability Act ("MPLA"). [Doc. 12 at 2]. RGH also contends Counts I and II must be dismissed because they are barred by the exclusivity provision of the West Virginia Workers' Compensation Act ("WCA"). [*Id.* at 4]. Finally, RGH contends Doe's Complaint contains only "threadbare recitals" of the elements of her various claims rather than sufficient factual allegations to state a claim to relief that is "plausible on its face." [*Id.* at 6 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))].

On February 12, 2021, Doe replied. [Doc. 17]. Doe first maintains the MPLA is

inapplicable. According to Doe, West Virginia Code Section 55-7B-2 limits the applicable terms to care or services rendered to a patient. [*Id.* at 3]. She further suggests that West Virginia Code Section 55-7B-1 applies only to "medical professional liability actions." [*Id.* at 5]. Second, Doe alleges her claims do not fall within the WCA, inasmuch as she was off duty when Kabbara assaulted her. [*Id.* at 9 (citing Syl. Pt. 1, *Cox v. U.S. Coal & Coke Co.*, 80 W. Va. 295, 92 S.E. 559 (1917))]. Doe also contends she has not alleged a compensable workers' compensation injury, so her claims should proceed outside of the workers' compensation system. [*Id.* at 11]. Finally, Doe contends her Complaint contains sufficient factual allegations to state a claim upon which relief may be granted. [*Id.* at 11–12]. Doe contends that RGH's assertions regarding the sufficiency of the factual allegations create evidentiary questions for the trier of fact. [*Id.* at 13–14].

RGH replied on February 19, 2021. [Doc. 19]. RGH contends it prevailed on its MPLA argument in state court but that the underlying class-action state lawsuit was voluntarily dismissed before the ruling was memorialized or entered.[1] [*Id.* at 3]. RGH claims Doe ignores the 2015 amendments to the MPLA which expanded the types of suits covered. [*Id.* at 5]. RGH next asserts the WCA applies even to mental or emotional injuries like the one at issue here. [*Id.* at 10]. Finally, RGH realleges that Doe has not met the pleading standard. [*Id.* at 11].

On June 3, 2021, RGH moved to supplement the record with a citation to a case from the Supreme Court of Appeals illustrating that the MPLA can be applied to non-patients. [Doc. 35 (citing *Brown v. Ohio Valley Health Servs. & Edu. Corp.*, No. 20-156, 2021 WL 2023532 (W. Va. May 20, 2021))]. Doe responded that supplementing RGH's arguments with a reference to a recent case would be futile. [Doc. 36 at 2–3]. Doe further contends the case is distinguishable

---

[1] It is for this reason the Court lacks sufficient information to consider whether the asserted ruling should be accorded issue preclusion or some comity-based deference.

inasmuch as it involved the provision of health care services to a non-plaintiff patient. [*Id.* at 3–4]. RGH replied, contending the case shows the MPLA may apply to non-patient plaintiffs. [Doc. 37 at 2].

On March 8, 2021, Doe filed a Motion for Rule 11 Sanctions. [Doc. 25]. The motion addresses RGH's contention that the pre-suit notice requirements of the MPLA bar Doe's action. [Doc. 26 at 6]. Doe contends this argument is "improper and unfounded so as to merit an award of sanctions under Rule 11 of the Federal Rules of Civil Procedure." [*Id.* at 2].

On March 22, 2021, RGH responded to Doe's Rule 11 Motion for Sanctions. [Doc. 32]. In pertinent part, RGH asserts that Rule 11 sanctions are "serious, and so too are motions in which one party accuses its adversary of having violated those obligations." [*Id.* at 1]. Further, RGH contends the arguments presented in its motion to dismiss do not fall within one of the enumerated improper purposes in *Federal Rule of Civil Procedure* 11(b). [*Id.*].

While these motions were pending, the United States Court of Appeals for the Fourth Circuit addressed the applicability of the pre-suit notice requirements of the MPLA in federal court. *See Pledger v. Lynch*, 5 F.4th 511 (4th Cir. 2021). The Court ordered the parties to brief the effect, if any, of this opinion upon the matters in controversy. [Doc. 38].

Doe maintains that the MPLA is inapplicable because she "was not a patient and the claims did not arise out of the provision of health care." [Doc. 41 at 2]. But Doe contends even if the MPLA is applicable to her claims, the pre-suit notice requirement is inapplicable inasmuch as it conflicts with Rules 8, 9, 11, and 12. [*Id.* at 3–5 (quoting *Pledger*, 5 F.4th at 519)]. Doe also contends the Federal Tort Claims Act ("FTCA") context of *Pledger* is immaterial inasmuch as our Court of Appeals noted the certificate requirement was procedural, not substantive. [*Id.* at 7–8].

In its supplemental briefing, RGH first asserts the Court should grant its motion to

dismiss on its non-MPLA arguments, avoiding the "thorny issues" in *Pledger* entirely. [Doc. 45 at 2]. RGH then maintains that *Pledger* is inapplicable because it is not a final judgment and the mandate has not yet issued. [*Id.* at 6 (citing Fed. R. App. P. 41(b))]. *Pledger*, RGH contends, is limited to FTCA cases and has no application to diversity cases. [*Id.* at 8–9]. Instead, RGH claims the controlling law applicable to its MPLA claims was stated in *Ward v. LiNA Med. USA, Inc.*, 2021 WL 45388 (S.D.W. Va. Jan. 5, 2021). [Doc. 45 at 5 n.5]. Finally, RGH contends our Court of Appeals in *Pledger* conducted its analysis improperly when it found a conflict between the MPLA and the Federal Rules of Civil Procedure. [*Id.* at 13–14 (citing *Pledger*, 5 F.4th at 530–31 (Quattlebaum, J. dissenting))].

On September 7, 2021, RGH filed a Motion for a Stay of Discovery. [Doc. 46 at 3]. RGH seeks a stay of discovery while awaiting the Court's ruling on its Motion to Dismiss. [Doc. 47 at 2–3].

## II.

### A. West Virginia Medical Professional Liability Act ("MPLA")

The MPLA defines "medical professional liability" as any liability for damages resulting from the death or injury of a person for any tort or breach of contract based on health care services rendered, or which should have been rendered, by a health care provider or health care facility to a patient." W. Va. Code § 55-7B-2(i). "Health care" includes "[t]he process employed by health care providers and health care facilities for the appointment, employment, contracting, credentialing, privileging and supervision of health care providers.*" Id.* § 55-7B-2(e)(3). "[W]hile the applicability of the [MPLA] is based upon the facts of a given case, the determination of whether a particular cause of action is governed by the [MPLA] is a legal question

to be decided by the trial court." *Manor Care, Inc. v. Douglas*, 234 W. Va. 57, 74, 763 S.E.2d 73, 90 (2014) (quoting *Blankenship v. Ethicon, Inc.*, 221 W. Va. 700, 706 n.12, 656 S.E.2d 451, 457 n.12 (2007)).

The MPLA includes a pre-suit notice requirement, which prohibits any person from "fil[ing] a medical professional liability action against any health care provider without complying with the [pre-suit notice] provisions of this section." *State ex rel. PrimeCare Med. of W. Va., Inc. v. Faircloth*, 242 W. Va. 335, 343, 835 S.E.2d 579, 587 (2019) (first brackets in original) (quoting W. Va. Code § 55-7B-6(a)). The Supreme Court of Appeals has held that "the pre-suit notice requirements contained in the MPLA are jurisdictional and that failure to provide such notice deprives a circuit court of subject matter jurisdiction." *Faircloth*, 242 W. Va. at 341, 835 S.E.2d at 585. The purpose of the requirements is "(1) to prevent the making and filing of frivolous medical malpractice claims and lawsuits; and (2) to promote the pre-suit resolution of non-frivolous medical malpractice claims." *Hinchman v. Gillette*, 217 W. Va. 378, 385, 618 S.E.2d 387, 394 (2005). "The requirement of a pre-suit notice of claim and screening certificate of merit is not intended to restrict or deny citizens' access to the courts." *Id.*

The aforementioned further briefing was ordered inasmuch as our Court of Appeals appears to have now squarely held that "state-law certification requirements like West Virginia's are inconsistent with the Federal Rules of Civil Procedure, and thus displaced by those rules in federal court." *Pledger*, 5 F.4th at 514. *Pledger* thus stands for the proposition that "the Federal Rules, not the MPLA, govern [plaintiff's] claims in federal court." *Id.* at 521.

Importantly, the decision in *Pledger* rejected the argument that "the MPLA should govern because it is 'substantive.'" *Id.* The court explained, "if a valid *Federal Rule* answers the question at issue . . . the Federal Rule governs." *Id.* (quoting *Shady Grove Orthopedic Assocs.,*

6

*P.A. v. Allstate Inc.*, 559 U.S. 393, 398 (2010)). The decision in *Pledger* also found that the MPLA is clearly procedural, as "West Virginia's certificate requirement appears in a statutory section governing "prerequisites' and 'procedures' for filing suit, not the section outlining the elements of proof for a claim." *Id.* at 523 (citing W. Va. Code § 55-7B-6).

**B. Rule 11 Sanctions**

In relevant part, the Federal Rules of Civil Procedure require an attorney or unrepresented party to attest that each of the submitted pleadings or written motions

> (1) is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; [and]
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law . . . .

Fed. R. Civ. P. 11(b). Binding precedent teaches that "[a]n assertion of law violates Rule 11(b)(2) when, applying a standard of objective reasonableness, it can be said that a reasonable attorney in like circumstances could not have believed his actions to be legally justified." *In re Sargent*, 136 F.3d 349, 352 (4th Cir. 1998). Merely "asserting a losing legal position . . . is not of itself sanctionable conduct." *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 151 (4th Cir. 2002). "Courts generally should reserve such sanctions for situations that are akin to a contempt of court." *In re Bees*, 562 F.3d 284, 287 (4th Cir. 2009).

**C. West Virginia Workers' Compensation Act ("WCA")**

"Workers compensation coverage is not extended to an employee who is injured while going to and coming from work, because absent special circumstances, that employee is not considered to be 'in the course of' his or her employment at the time." *Falls v. Union Drilling Inc.*,

7

223 W. Va. 68, 73, 672 S.E.2d 204, 209 (2008); *see also Roof Serv. of Bridgeport, Inc. v. Trent*, 244 W. Va. 482, 497, 854 S.E.2d 302, 317 (2020). Rather, "an employee is entitled to compensation for an injury sustained in going to or coming from his work, only where such injury occurs within the zone of his employment." *Falls*, 223 W. Va. at 73, 672 S.E.2d at 209 (2008). "No definite rule can be laid down as to what is the zone of employment, and each case must be decided on its own facts and circumstances." *Id.* (citing *Carper v. Workmen's Comp. Comm'r*, 121 W. Va. 1, 3, 1 S.E.2d 165, 166 (1939)).

### III.

*A. West Virginia Medical Professional Liability Act*

As noted, in *Pledger*, our Court of Appeals held the pre-suit notice requirements of the MPLA conflict with -- and are thus displaced by -- the Federal Rules of Civil Procedure. *Pledger*, 5 F.4th at 514. RGH claims *Pledger* is distinguishable inasmuch as it involved an action brought under the FTCA. The conflict between the pre-suit notice and the Federal Rules of Civil Procedure, however, does not dematerialize in diversity actions. *Pledger* applies just the same.

RGH's contentions that *Pledger* is flawed are similarly unavailing. RGH first cites prior district court opinions for the now-rejected proposition that the MPLA pre-suit requirements are substantive law. [Doc. 45 at 3 (citing *Ward*, 2021 WL 45388, at *4)]. RGH also asserts that the plurality opinion in the Supreme Court of the United States' *Shady Grove* opinion, quoted *supra*, is not controlling. [Doc. 45 at 12]. Regardless, *Pledger*, a published opinion from our Court of Appeals, is binding. That makes all the more puzzling RGH's numerous citations to the dissent in *Pledger*, which is not the law.

RGH also invites the Court to ignore *Pledger* inasmuch as the mandate has not yet

issued. In the unlikely event *Pledger* was vacated, however, RGH's argument for dismissal under the MPLA fails for another reason: the MPLA does not apply to this action, which is not a medical professional liability claim. RGH gives the MPLA a reading unmoored from any connection to patients, an interpretation unsupported by the text. Moreover, such a reading would be contrary to the MPLA's purpose. *See, e.g.*, *Cline v. Kresa-Reahl*, 229 W. Va. 203, 212, 728 S.E.2d 87, 96 (2012) (quoting Syl. Pt. 6, *Hinchman*, 217 W. Va. at 380, 618 S.E.2d at 389 ("[A] reviewing court should apply [the MPLA pre-suit notice requirements] in light of the statutory purposes.")); *see also* W. Va. Code § 55-7B-1 (describing the purpose of the MPLA as protecting the public from injury or death caused by professional negligence).

The MPLA applies to "any tort or breach of contract based on health care services rendered, or which should have been rendered, by a health care provider or health care facility *to a patient*." W. Va. Code § 55-7B-2(i) (emphasis added). Importantly, both the torts and the breaches of contract discussed in the MPLA are discussed in reference to the provision of health care services rendered to a patient. *See Henson v. Santander Consumer USA, Inc.*, 817 F.3d 131, 139 (4th Cir. 2016).

The Court notes the MPLA also applies to "other claims that may be contemporaneous to or related to the alleged tort or breach of contract or otherwise provided, all in the context of rendering health care services." W. Va. Code § 55-7B-2(i). This addition expands the scope of the MPLA, but it does not do so without limit. The term "otherwise provided" does not expand the MPLA to cover all actions involving health care providers; it only covers those actions *contemporaneous to or related to* torts or breaches of contract comprising traditional medical professional liability claims.

Second, the torts and breaches of contract referenced in the second sentence of West

9

Virginia Code Section 55-7B-2 must be interpreted consistently with the torts and breaches of contract in the first sentence of the applicable statutory language. Again, the torts or breaches of contract must have some connection to traditional medical professional liability claims.

Accordingly, the MPLA might apply to claims not brought by patients, but it does not then follow that the MPLA applies to *every* claim brought against health care providers. *See, e.g.*, *Manor Care v. Douglas*, 234 W. Va. 57, 72–73, 763 S.E.2d 73, 88–89 (2014) (discussing circumstances outside of medical professional liability actions). Doe alleges Kabbara, employed or credentialed by RGH, sexually assaulted her while on break. [Doc. 1-1 at 11–13]. This is quite unlike the supplementary case supplied by RGH, where the MPLA applied because the injuries sustained were "contemporaneous to or related to" the provision of health care services to a patient. Specifically, *Brown* was a medical professional liability action because "[p]etitioners' negligence claim is predicated on respondents' decision to transport the patient to another healthcare facility." *Brown*, 2021 WL 2023532, at *3.

In this case, there is no patient to be found. Doe is an employee of RGH. [Doc. 1-1 at 12]. She does not bring claims contemporaneous to or related to any tort, breach of contract, or other action involving a patient. Doe's action is not a medical professional liability action.[2] So, irrespective of the decision in *Pledger*, the MPLA's pre-suit notice requirements are inapplicable inasmuch as this is not a medical professional liability action.

***B. Rule 11 Sanctions***

Having rejected RGH's MPLA arguments, the Court turns to Doe's Motion for

[2] The Court observes that counsel for RGH, on the civil cover sheet accompanying the notice of removal, described the cause of action as "[e]mployment discrimination based on state law and other West Virginia common law claims." [Doc. 1-4 at 1].

Rule 11 Sanctions. [Doc. 25]. Doe alleges RGH's attempt to apply the pre-suit notice requirements of the MPLA is so improper as to be sanctionable. [Doc. 26 at 2]. The Court disagrees. Although RGH's arguments applying the pre-suit notice requirements are ultimately unavailing, they were not so outlandish as to warrant sanctions. And neither is RGH entitled to its expenses in responding to the motion. [*See* Doc. 32 at 2].

### C. West Virginia Workers' Compensation Act

Next, the Court considers whether the WCA requires the dismissal of Counts 1 and 2. RGH contends that the WCA applies, and its exclusivity provision bars Doe's claims. [Doc. 12 at 4]. Doe responds that her injury did not occur "in the course of and resulting from her employment." [Doc. 17 at 8]. As noted, the test for whether the WCA applies is whether "such injury occurs within the zone of [the worker's] employment." *Falls*, 223 W. Va. at 73, 672 S.E.2d at 209. This is a fact-intensive inquiry as "each case must be decided on its own facts and circumstances." *Id.*

In view of the yet-developing nature of the evidentiary record, the matter is unsuitable for final disposition. Doe's allegations are sufficient to avoid dismissal. Accordingly, the Court **DENIES** without prejudice on this ground.

### D. Pleading Standard

Finally, RGH contends Doe has not pled sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." [Doc. 12 at 6 (quoting *Bell Atl. Corp.*, 550 U.S. at 570)]. Doe makes multiple, concrete factual allegations describing Kabbara's alleged misconduct. [Doc. 1-1 at 12–13]. Each subsequent claim contains factual

allegations sufficient to state a claim to relief that is plausible on its face. [*See generally* Doc. 1-1].

## IV.

Having considered the entirety of the record, and based upon the foregoing discussion, the Court **ORDERS** as follows:

1. RGH's Motion to Dismiss Plaintiff's Complaint [**Doc. 11**] is **DENIED** as more fully explicated *supra*;

2. Doe's Motion for Rule 11 Sanctions [**Doc. 25**] is **DENIED**, and RGH's expenses in responding to the unsuccessful Rule 11 motion are likewise **DENIED**;

3. RGH's Rule 15(d) Motion to Supplement Prior Pleadings [**Doc. 35**] is **DENIED** as moot inasmuch as the Court addressed the precedent therein; and

4. RGH's Motion to Stay Discovery [Doc. 46] is **DENIED** as moot.

The Court directs the Clerk to transmit a copy of this Memorandum Opinion and Order to counsel of record and to any unrepresented party.

ENTER: September 30, 2021



Frank W. Volk
United States District Judge